IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SECOND PRESBYTERIAN CHURCH
OF ALBUQUERQUE, NM,

      Plaintiff,

v.                                                                 23-cv-530 MV/JFR

CHURCH MUTUAL INSURANCE COMPANY,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

      THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment on Limitations Grounds ("Motion for Summary Judgment") [Doc. 20] and Plaintiff's Motion for Certification of Question of Law to the New Mexico Supreme Court ("Motion for Certification") [Doc. 30]. The Court, having considered the Motions and relevant law, finds that Defendant's Motion is well-taken in part and will be granted in part, and Plaintiff's Motion is not well-taken and will be denied.

## BACKGROUND

      Plaintiff Second Presbyterian Church of Albuquerque, NM ("Second Presbyterian") purchased real property insurance coverage from Defendant Church Mutual Insurance Company ("Church Mutual") for its church building ("Property"). Doc. 1-1 ¶ 8. Church Mutual issued Second Presbyterian an insurance policy (the "Policy") to cover the Property "for loss due to hail, wind, and other covered perils." *Id.* ¶ 9. The Policy contained a "time to sue" provision that stated: "No one may bring a legal action against [Church Mutual] under this Coverage Part

unless: . . . 2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred." Doc. 20 (Exhibit A).

On or about July 30, 2018, the Property sustained damage because of a hailstorm. Doc. 1-1 ¶ 11. Second Presbyterian notified Church Mutual of the loss caused by the storm in October 2019, when the roof first began to leak. *Id.* ¶ 14. Church Mutual assigned an adjuster to inspect the Property and retained Rimkus Consulting Group, which Second Presbyterian alleges to be "a notoriously outcome-oriented engineering firm," to inspect the damage and issue a report. *Id.* ¶¶ 15-16. Rimkus concluded that the damage to the metal roof system was cosmetic rather than functional, and that the leak was a result of long-term wear, tear, and deterioration rather than a result of the hailstorm. *Id.* ¶ 17. Second Presbyterian alleges that, based on Rimkus's conclusion, Church Mutual "misrepresented to Plaintiff that it was not entitled to the complete removal and replacement of the metal roof system." *Id.* ¶ 18. Second Presbyterian relied to its detriment on this "misrepresentation" until early Spring 2022, when it retained All Star Public Adjusters ("All Star") to investigate the continued leaks that had been occurring during rainstorms. Doc. 26 ¶¶ 10-11. All Stars concluded that the Property sustained functional rather than cosmetic damage during the 2018 hailstorm, and that the damage required the complete removal and replacement of the metal roof system at a cost of approximately $800,000. *Id.* ¶¶ 11-13. Second Presbyterian presented Church Mutual with evidence of the damage, including photographs showing that the hailstone impact "dented and distorted the metal paneling so severely that the interlocking seams separated to the point that a business card could be placed between the seams." *Id.* ¶ 12. According to Second Presbyterian, this evidence established "that Defendant's representations in November 2019 that the roof had only cosmetic damage w[ere] false." *Id.* ¶ 13. Nonetheless,

Church Mutual "failed to acknowledge the functional damage to the roof or pay for same." *Id.* ¶ 14.

As a result of these events, on May 9, 2023, Second Presbyterian commenced the instant action, filing its Complaint for Breach of Insurance Contract, Violation of the New Mexico Unfair Claim Practices Act, and Bad Faith Actions in New Mexico State Court. Doc. 1-1. On June 20, 2023, Church Mutual removed the action to this Court. Doc. 1. Thereafter, Church Mutual filed its Motion for Summary Judgment, arguing that this action is time-barred because Second Presbyterian "did not bring an action against Church Mutual within 2 years after the date on which the direct physical loss or damage occurred," as required by the time-to-sue provision in the Policy. Doc. 20 at 1-2. Second Presbyterian filed a response in opposition, and, in addition, filed its Motion for Certification, asking this Court to certify to the New Mexico Supreme Court the question of whether an insurer must demonstrate substantial prejudice before a time-to-sue provision will be enforced. These motions are now before the Court.

## DISCUSSION

I.   <u>Church Mutual's Motion for Summary Judgment</u>

A.   <u>Standard</u>

The court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party need not "produce evidence showing the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rather, "the burden on the moving party may be discharged by 'showing' – that is, point out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.*; *see also Sports Unltd., Inc., v. Lankford Enter., Inc.*, 275 F.3d 996, 999 (10th Cir. 2002) (Although "[t]he burden

of showing that no genuine issue of material fact exists is borne by the moving party," when "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden by pointing to a lack of evidence for the nonmovant on an essential element of the nonmovant's claim"). Once the moving party has met this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. In making this showing, the nonmoving party may not rely on "the mere pleadings themselves." *Id.*

For purposes of Rule 56(a), a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Id.* (citation omitted). In other words, "[t]he question . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (citation omitted). On summary judgment, the court "construe[s] the factual record and the reasonable inferences therefrom in the light most favorable to the nonmoving party." *Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005).

B.     Instant Case

Church Mutual argues that Second Presbyterian's breach of contract claim, first raised when it commenced the instant action on May 9, 2023, is prohibited by the time-to-sue provision in the Policy, as it required Second Presbyterian to bring any suit against Church Mutual within two years after the date on which the direct physical loss or damage occurred, or no later than July 30, 2020. Church Mutual further argues that Second Presbyterian's bad faith and unfair

insurance claim practices claims are equally time-barred. As set forth herein, the Court finds that the time-to-sue provision in the Policy forecloses Second Presbyterian's breach of contract claim but does not equally prohibit Second Presbyterian from pursuing the remainder of its claims.

               1.      <u>Breach of Contract Claim</u>

In the Complaint, Second Presbyterian asserts that Church Mutual "had the absolute duty to investigate Plaintiff's damages and to pay Policy benefits for the claim made due to the extensive damages caused by the subject wind and hailstorm, and "breached its contractual obligations under the Policy by failing to pay Plaintiff benefits relating to the cost to properly repair the Property, as well as for related losses." Doc. 1-1 ¶¶ 43, 45. Invoking the time-to-sue provision of the Policy, which requires that an action be brought within two years after the date of loss, Church Mutual argues that Second Presbyterian's breach of contract claim is time-barred because Second Presbyterian filed it more than two years after the alleged date of the hail damage to the Property. Doc. 20 at 2.

Second Presbyterian acknowledges that its claim is untimely under the Policy's time-to-sue provision. Doc. 26 at 8. It contends, however, that its claim is not barred because Church Mutual "must show it was substantially prejudiced" by Second Presbyterian's failure to comply with the time to-sue provision before it will be relieved of its obligations under the Policy. *Id.* In the alternative, Second Presbyterian argues that, by engaging in intentional misrepresentations of fact during its investigation and assessment of Second Presbyterian's claim, Church Mutual waived its right to assert the time-to-sue provision as an affirmative defense. *Id.* at 21. Although sympathetic to Second Presbyterian's plight, the Court is constrained to find that neither argument saves Second Presbyterian from application of the Policy's time-to-sue provision to its breach of contract claim.

*Under New Mexico Supreme Court Precedent, Time-to-Sue Provisions Are Enforceable Without a Showing of Prejudice.*

In cases, such as this one, "arising under diversity jurisdiction, the federal court's task is not to reach its own judgment regarding the substance of the common law, but simply to ascertain and apply the state law." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007). In doing so, the Court "must apply the most recent statement of state law by the state's highest court." *Wood v. Eli Lilly & Co.,* 38 F.3d 510, 513 (10th Cir.1994); *see also Wade*, 483 F.3d at 665–66 ("The federal court must follow the most recent decisions of the state's highest court.").

In the 1981 case of *Sanchez v. Kemper Ins. Cos.*, the New Mexico Supreme Court addressed the precise issue before the Court here, namely, "whether [an insurer] is entitled to summary judgment where [the insured] did not bring suit upon [its] claim within the period of time required by the contract and [the insurer] did not show prejudice caused thereby." 632 P.2d 343, 344 (N.M. 1981). The New Mexico Supreme Court answered this question in the affirmative. *Id.* at 345. The *Sanchez* Court held that, "where the insurer raises the affirmative defense of a time-to-sue provision, it need not show that it was prejudiced by violation of the provision. It need only show the breach." *Id.* In explaining this holding, the Court noted that "time-to-sue provisions advance [several] public policy considerations," including avoiding "uncertainty as to the amount of [the insurer's] liability," decreasing "the possibility of fraudulent claims," ensuring the "prompt assertion of legal claims," and allowing "stale claims to be cut off." *Id.* Ten years later, in *State ex. rel. Udall v. Colonial Penn Ins. Co.*, the New Mexico Supreme Court noted: "Our courts consistently have held that contractual limitations on actions, including time-to-sue provisions, will be enforced unless they violate public policy." 812 P.2d 777, 779 (1991) (citing *Green v. General Accident Ins. Co. of Am.,* 106 N.M. 523, 525 (1987)

(citing *Sanchez* for the proposition that the New Mexico Supreme Court "has upheld insurance contract time-to-sue provisions" and has found "no specific public policy reason . . . for not enforcing such a provision")).

One year after *Udall* was decided, in *Roberts Oil Co., Inc. v. Transamerica Ins. Co.*, the New Mexico Supreme Court discussed – and criticized – *Sanchez*. 833 P.2d 222, 229 (N.M. 1992). Specifically, the Court indicated that the distinction drawn in *Sanchez* between a time-to-sue limitation provision, which the Court had found to be enforceable without any showing of prejudice by the insurer, and a "notice clause," which requires a showing of prejudice by the insurer before it will be enforced, "is now open to serious question." *Id.* at 228-229. The Court noted that, while it "agree[d] with the *Sanchez* approach of focusing on the purpose of the contractual provision at issue," it "question[ed] the Court's analysis of the relevant considerations underlying the respective policy provisions." *Id.* at 229. In particular, the Court noted that the policy considerations identified in *Sanchez* – avoiding uncertainty as to the amount of the insurer's liability, decreasing the possibility of fraudulent claims, ensuring the prompt assertion of legal claims, and allowing stale claims to be cut off – "either duplicate those underlying a cooperation clause . . . or replicate policies behind the statute of limitations." *Id.* The Court stated that, "[w]hen a contractual modification of the statute of limitations is truly bargained for, there may be good reason to enforce the bargain," but went on to note that, "when such provisions appear in contracts of adhesion like insurance policies, their enforcement . . . will probably frustrate the consumer's reasonable expectation that coverage will not be defeated on arbitrary procedural grounds." *Id.*

The *Roberts Oil* Court, however, did not overrule *Sanchez*, and in fact wrote specifically to state that it was not doing so. *Id.* ("The present case does not involve a time-to-sue clause, so

there is no occasion to overrule *Sanchez*."). The Court's final word on *Sanchez* was as follows: "[W]e think its result and some of its rationale are questionable." *Id.*

Since *Roberts Oil*, the New Mexico Supreme Court has not revisited its questions about *Sanchez's* rationale and result, much less overruled *Sanchez*, and to date has not again suggested that it would hold a time-to-sue provision enforceable only upon a showing of breach. To the contrary, in its 2010 decision *City of Santa Fe v. Travelers Cas. & Sur. Co.*, 228 P.3d 482 (N.M. 2010), the New Mexico Supreme Court appeared to go out of its way to reaffirm its belief in the public policy considerations behind enforcing time-to-sue provisions pursuant to their terms. Specifically, in *City of Santa Fe*, after reversing summary judgment against the City in favor of a insurer based on a time-to-sue provision to which the City had not directly contracted (as the provision was in a contract to which the only parties were a contractor of the City and the insurer), the New Mexico Supreme Court wrote specifically to clarify that it did "not intend to suggest that the contractor or the surety, or both, cannot contract for a shorter time-to-sue provision directly with a governmental entity." *Id.* at 485. The Court cited *Udall*, and noted that in that decision, it had "upheld a time-to-sue provision as part of the contract agreed to between the state and the insurers." *Id.* The Court then went on to discuss (favorably) the "rationale for [its] holding [in *Udall*]," namely, that "a party who executes and enters into a written contract with another is presumed to know the terms of the agreement, and to have agreed to each of its provisions." *Id.* Under these circumstances, the Court explained, "the important public policy of freedom of contract mandated enforcement of the bargained-for-time-to-sue provision." *Id.*

In hailing the public policy of freedom of contract as "important," and finding that this policy consideration "mandated" what it specifically referred to as a "bargained for" contractual term, the Court inherently, if not overtly, eschewed the concern it had raised in *Roberts Oil* that

8

enforcement of such a provision in "contracts of adhesion like insurance policies . . . would probably frustrate the consumer's reasonable expectation that coverage will not be defeated on arbitrary procedural grounds." 833 P.2d at 229. Thus, in *City of Santa Fe*, the Court seemingly turned away from the notion that time-to-sue provisions in insurance contracts are "not truly bargained for," *id.*, and instead embraced the tenet that, even in the insurance context, "a party who executes and enters into a written contract with another is presumed to know the terms of the agreement, and to have agreed to each of its provisions." 228 P.3d at 485.

Moreover, the Tenth Circuit has cited *Sanchez* for the very proposition that *Roberts Oil* called into question. In its 2015 decision *B.S.C. Holding, Inc. v Lexington Ins. Co.*, the Tenth Circuit enumerated New Mexico as one of the "majority of jurisdictions" that, while "requir[ing] an insurer show prejudice to enforce a notice-of-loss provision . . . do not require an insurer show prejudice to enforce a suit-limitation provision." *Id.* 625 F. App'x 906, 910-11 (10th Cir. 2015). This Court would be hard-pressed to decline to follow the Tenth Circuit's interpretation of New Mexico law. *See Anderson Living Tr. v. WPX Energy Prod., LLC*, 27 F. Supp. 3d 1188, 1243 (D.N.M. 2014) (noting that, despite its "serious doubts" about the accuracy of Tenth Circuit's interpretation of New Mexico law, the district court was "bound to abide by the Tenth Circuit's holding").

In short, *Sanchez* represents "the most recent statement of state law by the state's highest court," and this Court thus must apply it to the instant case. *Wood,* 38 F.3d at 513. Under *Sanchez*, Church Mutual need not show that it was prejudiced by Second Presbyterian's failure to bring suit upon its claim within the two-year time-period required by the Policy to obtain summary judgment in its favor. Summary judgment in Church Mutual's favor this is warranted.

Second Presbyterian's arguments to the contrary are unavailing, as they rest on the incorrect premise that this Court's obligation as a federal court sitting in diversity is to predict whether the New Mexico Supreme Court would overrule *Sanchez* today "if given the opportunity." Doc. 26 at 8. It is only "[i]n the absence [] of an authoritative pronouncement from the state's highest court" that this Court's "task" is to "predict" how the state's highest court would rule." *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984); *see also Wade*, 483 F.3d at 666 ("Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do."). *Sanchez*, however, is an "authoritative pronouncement from the state's highest court." *Daitom*, 741 F.2d at 1574. Accordingly, this Court is obligated to apply New Mexico law as thus "announced by the highest court of the State" in *Sanchez. Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, (1967).

The Court recognizes that another court in this district reached the opposite conclusion. Specifically, in *Durante v. American States Ins. Co*, the court concluded that, in *Roberts Oil*, *Sanchez* was "overruled by implication." No. 99-cv-1179, 2000 WL 36739969, at *4 (D.N.M. Apr. 12, 2000). Not least because the New Mexico Supreme Court took pains to clarify that it was *not* overruling *Sanchez*, this Court respectfully does not agree that *Roberts Oil* overruled *Sanchez*. Notably, *Durante* was decided before *City of Santa Fe*. As discussed above, the *City of Santa Fe* Court reaffirmed the efficacy of the public policy concerns advanced by the holding of *Sanchez*, which would be frustrated by refusing, as did the court in *Durante*, to recognize *Sanchez* as the law of New Mexico.

Nor does the decision in *Raja v. Ohio Sec. Ins. Co.*, 305 F. Supp. 3d 1206 (D.N.M. 2018), support the notion that *Sanchez* has been overruled. To the contrary, the *Raja* court noted that *Roberts Oil* "strongly indicates that, given the chance, [the New Mexico Supreme Court] *would*

10

overrule *Sanchez.*" *Id.* at 1248 (emphasis added). But as noted above, whether the New Mexico Supreme Court *would* overrule a prior decision is not relevant to this Court's task here. As it has not been overruled, *Sanchez* remains the most recent statement of state law by the state's highest court, and thus must be applied to the instant case. Indeed, the *Raja* court based its decision in the case before it to refrain from granting the defendant's motion dismiss in part on the very fact that, if the plaintiff were to refile the action, the new suit would be foreclosed under *Sanchez* by a contractual two-year time-to-sue provision. *Id.* And while the *Raja* court noted that if plaintiff were obligated to commence a new suit, it "could at that time argue that the court should not enforce the Contract's time-to-sue provision" without a showing of substantial prejudice, the court ultimately concluded that "the Supreme Court of New Mexico would enforce the Contract's time-to-sue provision." *Id.*

Accordingly, *Sanchez* remains controlling state law and this Court must apply it to this instant case. Under *Sanchez*, based on the undisputed fact that Second Presbyterian filed this action more than two years after it suffered damage from the hailstorm, Second Presbyterian's suit is time-barred under the two-year time-to-sue provision in the Policy.

*Church Mutual Did Not Waive Its Right to Assert the Time-To-Sue Provision as an Affirmative Defense.*

The doctrines of waiver and estoppel "mitigate the harsh results of enforcing suit limitation clauses." *JLD Props. of St. Albans, LLC v. Patriot Ins. Co.*, No. 20-cv-134, 2021 WL 2077952, at *3 (D. Vt. May 21, 2021). Under New Mexico law, an "insurer may be estopped from raising the affirmative defense of a time-to-sue provision." *Green*, 746 P.2d at 154. "Estoppel arises when an individual has been induced by the conduct of another to do, or forbear from doing, something he would or would not have done but for such conduct." *Id.* "Waiver of a time-to-sue provision may be accomplished by slight acts and circumstances, and must be

determined by the facts of the case." *Id.* at 155. "The acts and conduct generally held to constitute a waiver of a time-to-sue provision are those acts which would lull the insured into reasonably believing that its claim would be settled without suit." *Id.* at 154.

Thus, for example, in *Presbyterian Healthcare Servs. v. Factory Mut. Ins. Co.*, the court found that the insurer "engaged in voluntary conduct by which it relinquished its right to assert the time-to-sue provision as a defense" where the insurer "investigated and considered the disputed portion of the claim both within the twelve-month time-to-sue period and for several years after it expired," "never denied liability, [and] never stated that it would refuse to negotiate or cooperate with [the insured]." 512 F. Supp. 3d 1169, 1178-79 (D.N.M. 2021).

Similarly, in *Green*, the Court found "substantial evidence to support a finding" that the insurer's conduct lulled the insured into reasonably believing that one of his claims for loss would be settled without suit, where none of the insurer's communications over the course of the year intimated that the claim would not be settled amicably, and the insurer apologized for the facts that the claim was taking so long and it was unable to pay the claim until all the surrounding circumstances were clarified. The Court stated, "[a]n insurer should not be allowed to induce an insured's participation in an investigation past the twelve month time-to sue provision and then rely on that contractual provision," especially where, as was true in the case before it, "the insurer does not give any indication that it will deny liability but instead tells the insurer only weeks prior to the time bar's applicability that 'if you will cooperate with us in investigating the facts surrounding the claim, this matter should be ready for resolution." *Id.*

In contrast, the *Green* Court found that the evidence did not support a finding that the insured should be estopped from relying on the same 12-month time-to-sue provision to bar recovery on a different claim, where the insured "was put on notice within ninety days" that the

insurer was prepared to offer a smaller sum to settled the insured's loss, and when the insured indicated that he was "prepared to seek legal action to bring about a satisfactory settlement," the insurer responded that the offered sum was the entirety of the amount to which the insured was entitled. *Id.* The Court explained that "nothing thereafter on the part of [the insurer] could have induced [the insured] to reasonably believe that the [] loss was going to be settled to his satisfaction without suit." *Id.*

Second Presbyterian argues that "at a minimum, there are disputed issues of material fact related to whether Defendant should be estopped and/or found to have waived its ability to assert the time-to-sue provision as an affirmative defense." Doc. 26 at 22. In support of this argument, Second Presbyterian points to "Defendant's misrepresentation of fact that the roof of the Property had only cosmetic damage that was not covered under the Policy," and argues that this misrepresentation "lulled Second Presbyterian into reasonably believing that the Claim was settled without the need for a lawsuit." *Id.* This contention misunderstands the principle of estoppel.

For Church Mutual to be estopped from relying on the two-year time-to-sue provision, the evidence would need to show that Church Mutual's conduct lured Second Presbyterian into reasonably believing that Church Mutual would pay its claim to its satisfaction without the need for Second Presbyterian to resort to a lawsuit. Here, it is undisputed that the opposite happened: in Second Presbyterian's own words, Church Mutual advised that the hail damage was "only cosmetic damage that was not covered under the Policy." Whether this advisement was based on a misrepresentation as to the nature of the damage is irrelevant, as it does not change the fact that Church Mutual expressly denied liability for the loss sustained by Presbyterian. Second Presbyterian's own version of the facts thus demonstrate that, contrary to being lulled into

13

reasonably believing that its claim would be settled to its satisfaction without suit, it was put on notice well before the time-to-sue provision expired that Church Mutual had no intention of taking financial responsibility for repairs or replacement of the roof, either before the limitations period expired or after. There thus is simply no evidence to support a finding that Church Mutual should be estopped from relying on the time-to-sue provision to bar the instant action.

### 2. Unfair Insurance Claims Practices and Bad Faith Claims

In addition to its breach of contract claim, Second Presbyterian asserts a claim under the New Mexico Unfair Insurance Claim Practices Act ("NMUICPA") and a claim of bad faith. Church Mutual argues that because these claims are "predicated" on Second Presbyterian's "time-barred [contractual] claim, they too are subject to dismissal." Doc. 38 at 3. Second Presbyterian disagrees, arguing that neither its NMUICPA claim nor its bad faith claim is subject to the time-to-sue provision because each claim is predicated on Church Mutual's "improper handling" of Second Presbyterian's claim, rather than on its "failure to pay the benefits rightfully owed under the Policy." Doc. 26 at 18. The Court agrees with Second Presbyterian.

First, Second Presbyterian's claim under the NMUICPA is "founded on violations of [a] statute[]," and thus falls under "the four-year statute of limitations set forth in Section 37-1-4 [of the New Mexico Statutes Annotated]." *Nance v. L.J. Dolloff Assocs., Inc.*, 126 P.3d 1215, 1220 (N.M. Ct. App. 2006). Church Mutual has provided no authority to suggest to that, instead, this statutory claim is circumscribed by the two-year time-to-sue provision in the Policy.

Next, it is true that, under New Mexico law, "claims of bad faith to pay 'cannot arise unless there is a contractual duty to pay under the policy.'" *Albuquerque Ambulatory Eye Surgery Ctr. LLC v. Transp. Ins. Co.*, 566 F. Supp. 3d 1178, 1196 (D.N.M. 2021) (quoting *Haygood v. United Servs. Auto. Ass'n*, 453 P.3d 1235, 1241 (N.M. Ct. App. 2019)); *see also*

14

*OR&L Constr., L.P. v. Mountain States Mut. Cas. Co.*, 514 P.3d 40, 51 (N.M. Ct. App. 2002)

("[A]n insured cannot raise a claim of bad faith based on an insurer's failure to pay a covered

claim unless the insured can establish that coverage exists."). Nonetheless, the New Mexico

Court of Appeals has held that "a bad faith claim need not depend on the existence of coverage."

*Haygood*, 453 P.3d at 1242. Accordingly, "if bad faith is asserted as to conduct beyond a denial

of coverage and the refusal to pay, the bad faith claim is actionable as to that conduct regardless

of whether the contract claim survives." *Albuquerque Ambulatory Eye Surgery Ctr.*, 566 F. Supp.

3d at 1196 (citing *Haygood*, 453 P.3d at 1242). Thus, the *Haygood* court noted that an insured

"might establish bad faith in a variety of ways" that are not "predicated on coverage," such as

with evidence that an insurer "intentionally delayed the coverage decision, intentionally failed to

fairly evaluate the claim, and dishonestly handled the claim to [its] advantage." 453 P.3d at 1242.

Here, Second Presbyterian grounds its bad faith claim, and indeed, its NMUICPA claim,

on Church Mutual's intentional conduct from the time it was first notified of the loss sustained

by Second Presbyterian and continuing until its refusal to reassess that loss when presented with

evidence of Second Presbyterian's expert's inspection. Specifically, Second Presbyterian's

recitation of the facts indicates that Church Mutual retained an adjuster that is "notoriously

outcome-oriented," and thereafter made numerous misrepresentations to Second Presbyterian,

namely that the nature of the damage to the roof system was "cosmetic" rather than "functional,"

that the cause of the leak was wear-and-tear rather than the hailstorm, and that Second

Presbyterian was not entitled to the complete removal and replacement of the roof system.

Construed in the light most favorable to Second Presbyterian, these facts would establish Church

Mutual's bad faith, and violation of several provisions of the NMUICPA, in ways that are

predicated not on coverage, but rather on Church Mutual's failure "to deal fairly in handling the

15

claim," "to conduct a fair investigation," and "to fairly evaluate coverage." *Haygood*, 453 P.3d at 1242.

Accordingly, Second Presbyterian's claims for bad faith and violations of the NMUICPA are "not entirely foreclosed even in the absence of coverage under the Policy." *Albuquerque Ambulatory Eye Surgery Ctr.*, 566 F. Supp. 3d at 1197. The time-to-sue provision thus provides no affirmative defense to Church Mutual as to Second Presbyterian's NMUICPA and bad faith claims. Because the time-to-sue provision was the only basis presented by Church Mutual in support of its request for summary judgment in its favor on these claims, the Court will allow Second Presbyterian to pursue its NMUICPA and bad faith claims against Church Mutual.

II.     Motion to Certify

   A.     Standard

The New Mexico Supreme Court may answer questions of law certified to it by a federal court if "the answer may be determinative of an issue in pending litigation in the certifying court and the question is one for which answer is not provided by a controlling (a) appellate opinion of the New Mexico Supreme Court or the New Mexico Court of Appeals; or (b) constitutional provision or statute of this state." NM R RAP Rule 12-607(A)(1); *see also* NMSA 1978, § 39-7-4 (1997) ("The supreme court of this state may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state."). The New Mexico Supreme Court generally accepts certifications when there are no factual disputes regarding the questions certified and the "answer either disposes of the entire case or controversy or disposes of a pivotal issue that defines the future course of the case." *Schlieter v. Carlos*, 1980-NMSC-037, ¶ 5, 108 N.M. 507, 508 (citations omitted). Other considerations

16

include whether the certified question is one of substantial public interest, the degree of uncertainty in the law, and judicial economy. *Id.* ¶ 15. Notably, federal courts are counseled not to "trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007). Rather, "[w]hen we see a reasonably clear and principled course, we will seek to follow it ourselves." *Id.* Accordingly, "certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1120 (10th Cir.2008 (citation omitted).

      B.    <u>Instant Case</u>

On its Motion for Certification, Second Presbyterian asks the Court to certify to the New Mexico Supreme Court the question of whether, where "an insurance carrier asserts a time-to-sue provision of an insurance policy as an affirmative defense," [a]n insurer must demonstrate substantial prejudice as a result of a material breach of the insurance policy by the insured before it will be relieved of its obligations under a policy." Doc. 30 at 1. In proposing this question, Second Presbyterian cites to *Roberts Oil.* Essentially, then, Second Presbyterian seeks to have this Court give the New Mexico Supreme Court the opportunity to do what it did not do in *Roberts Oil*, namely, overrule *Sanchez*. This, however, is not the proper use of the certification process.

New Mexico law is clear that certification of a question to the New Mexico Supreme Court is appropriate only if "there is no controlling appellate decision" that answers the question at issue. As discussed in detail above, there *is* a controlling appellate decision that squarely answers the question that Second Presbyterian seeks to have certified. Specifically, in *Sanchez*, the New Mexico Supreme Court held that "where the insurer raises the affirmative defense of a

time-to-sue provision, it need not show that it was prejudiced by violation of the provision. It need only show the breach." 632 P.2d at 345. In *Roberts Oil*, the New Mexico Supreme Court unequivocally indicated that it was not overruling *Sanchez*, stating, "The present case does not involve a time-to-sue clause, so there is no occasion to overrule *Sanchez*." 833 P.2d at 229.

Accordingly, *Sanchez* is a "controlling appellate decision" that answers the question at issue. Regardless of whether Second Presbyterian believes that it *should* be overruled, the fact remains that it *has not* been overruled. Under these circumstances, it would be improper for this Court to certify the question posed by Second Presbyterian. For this reason, Second Presbyterian's Motion for Certification must be denied.

## CONCLUSION

Second Presbyterian's claim for breach of contract is time-barred by an enforceable time-to-sue provision in the Policy and Church Mutual has not waived its right to assert the time-to-sue provision as an affirmative defense. Church Mutual thus is entitled to summary judgment on Second Presbyterian's breach of contract claim. Second Presbyterian's claims for bad faith and violation of the NMUICPA, however, are not time-barred, and thus may proceed. Because there is a controlling appellate decision that answers the question proposed by Second Presbyterian, certification of that question to the New Mexico Supreme Court would be improper.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment on Limitations Grounds [Doc. 20] is **GRANTED IN PART** and **DENIED IN PART**, as follows: judgment as a matter of law is granted in Church Mutual's favor as to Second Presbyterian's breach of contract claim (Count I); Second Presbyterian's NMUICPA claim (Count II) and Second Presbyterian's bad faith claim (Count III) remain viable.

**IT IS THEREFORE FURTHER ORDERED** that Plaintiff's Motion for Certification of Question of Law to the New Mexico Supreme Court [Doc. 30] is **DENIED**.


DATED this 28th day of October 2024.

_____
MARTHA VAZQUEZ
Senior United States District Judge

19